IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

DAVID CHANIOTT,

        Plaintiff,                Case No.

v.                                        Judge
                                        Magistrate Judge
DCI DONOR SERVICES, INC.
                                        JURY DEMAND
        Defendant.

_____/

## COMPLAINT

Plaintiff, David Chaniott, worked as a donor specialist at DCI's Nashville office for over four years when he was terminated two weeks after disclosing a disability and requesting an accommodation. In March 2018, Mr. Chaniott was moved from day to night shift without warning. Mr. Chaniott contacted his supervisors to inform him that his disability was exacerbated by a night shift schedule and requested to be moved back to days as accommodation. Defendant failed to engage in a good faith interactive process with Mr. Chaniott and instead perceived him as a danger based on his disabling condition and held him out of work indefinitely. Defendant ultimately terminated Mr. Chaniott from his employment despite his continuous efforts to return to work with a reasonable accommodation. As a result, DCI violated Mr. Chaniott's rights under the Americans with Disabilities Act, the Tennessee Disability Act, and the Family and Medical Leave Act

### PARTIES

1. Plaintiff, David Chaniott, is a citizen and resident of Davidson County, Tennessee, and a former employee of Defendant. Plaintiff worked at Defendant's Nashville, Davidson County, Tennessee location.

2. Defendant DCI Donor Services, Inc. ("DCI") is a Tennessee Nonprofit

1

Corporation licensed to transact business in Tennessee. Its registered agent for service of process is Corporation Service Company, 2908 Poston Avenue, Nashville, Tennessee 37203. At all material times, Defendant has been an employer as defined by under state law.

3. At all material times Defendant has been an employer as defined by the ADA, 42 U.S.C. § 12111.

4. Plaintiff is a qualified individual with a disability under 29 C.F.R. §1630.2(g) and (h)(1).

5. At all times material to this action, based on information and belief, Defendant has employed 50 or more employees for each working day during each of 20 or more calendar workweeks in 2017 and/or 2018 and is an "employer" as defined by the FMLA, 29 U.S.C. § 2611(4)(A).

6. At all times material to this action, Plaintiff was an "eligible employee" under the FMLA pursuant to 29 U.S.C. § 2611(2) and 29 C.F.R. § 825.110.

## JURISDICTION AND VENUE

7. This is an action for unlawful employment practices brought under the Americans with Disabilities Act 42 U.S.C. §§ 12101 *et. seq.* ("ADA"), as amended by the ADA Amendments Act of 2008 ("ADAAA") (Count I), Tennessee Disability Act, T.C.A. § 8-50-103 ("TDA") (Count II); and Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 et seq. ("FMLA") (Count III).

8. The Court has jurisdiction under 28 U.S.C. §§ 1331, 1343(a)(4), and 1367(a). Venue is proper under 28 U.S.C. § 1391.

9. Plaintiff complied with all conditions precedent to the filing of his claims pursuant to 42 U.S.C. § 12101 *et. seq*, to wit: a charge of discrimination was filed with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the unlawful employment

practice; the EEOC issued Plaintiff a Notice of Right to Sue for the charge and this action was commenced within 90 days of receipt of Notice of Right to Sue.

## FACTS

10. Plaintiff worked for Defendant DCI from January 24, 2014 until his termination on April 12, 2018.

11. In his last position with DCI, he was a donation specialist.

12. Plaintiff is a qualified individual with a disability under 29 C.F.R. §1630.2(h).

13. Plaintiff was qualified for his job with Defendant and performed his job duties in a competent and satisfactory manner.

14. Plaintiff had a good work history with DCI. He reported to work at all scheduled times and was willing to complete all tasks necessary in his department.

15. When he initially began work at DCI in 2014, Chaniott worked a night shift schedule. However, for the last almost two years of his employment, Mr. Chaniott had been assigned to a day shift.

16. On or around March 22, 2018, Mr. Chaniott was moved, without notice, from day shift to night shift. Upon information and belief, Mr. Chaniott was the only donor specialist moved from day to night shift at this time.

17. Mr. Chaniott worked his first assigned night shift on Thursday, March 22, 2018, and experienced a day's long anxiety and panic attack. After working this shift and experiencing a flare up of symptoms, Plaintiff immediately informed his supervisor that he suffered from anxiety, depression and that a night shift exacerbated his disabilities. Mr. Chaniott requested to be moved back to day shift on March 27, 2018. During this conversation, Mr. Chaniott also

3

confidentially disclosed that he suffered from an addictive disorder. However, the primary basis for his request for accommodation related to his anxiety and depression.

18. Mr. Chaniott was told by his supervisor that he needed to obtain a physician note for his absences and that he was required to work nights moving forward and was "unsure what – if any – alternative there would be."

19. Plaintiff heeded the request of his supervisors and saw his physician the next day on March 28, 2018. He provided his employer with a note confirming his visit as required on March 31, 2018.

20. On April 3, 2018, Plaintiff met with Human Resources director, Theresa Bledsoe. Ms. Bledsoe found Plaintiff's doctor's note insufficient and inquired further about his disabilities, specifically, symptoms related to his addictive disorder. Ms. Bledsoe informed Mr. Chaniott that he would be unable to return to work until he could provide documentation that he was physically able to work the night shift. No discussion was made regarding moving Mr. Chaniott back to days as an accommodation for his anxiety and depression. To the contrary, Ms. Bledsoe expressed doubts for Mr. Chaniott's continued employment based on his addictive disorder symptoms and refused to address his primary concerns related to his anxiety and depression.

21. The next day, on April 4, 2018, Mr. Chaniott returned once again to his doctor to discuss the information requested by Ms. Bledsoe. His doctor would not speculate as to whether he could work night shifts safely and informed him that he would need to see an occupational specialist to answer that question definitively. Mr. Chaniott immediately relayed this information to Ms. Bledsoe in writing and requested her assistance in finding an occupational specialist but was denied any such assistance. Mr. Chaniott was again told not to return to work.

22. On April 6, 2018, Plaintiff spoke with Ms. Bledsoe by phone. He again relayed the information from his appointment and informed her he was diligently searching for an occupational therapist at the recommendation of his doctor. He asked about returning to work but was told he was not permitted to return until documentation was received. In fact, he was told that even after receiving documentation, he may not be able to return to work due to his addictive disorder. In addition, Ms. Bledsoe denied him the right to use leave time accrued through his extended sick bank. At no time was he offered FMLA leave or notified of his rights.

23. On April 11, 2018, Mr. Chaniott visited his doctor for a third time to obtain the requested information. His doctor wrote a note indicating his diagnosis and confirming that a night shift exacerbates his disabilities. Mr. Chaniott intended to provide the note to DCI the following day.

24. On April 12, 2018, just one day after visiting his doctor and before he could discuss the results of the appointment with DCI Human Resources, and a mere two weeks after requesting accommodation, Mr. Chaniott received a letter by US Mail terminating him from his employment. The termination letter references his addictive disorder and accuses him of being untruthful.

25. Mr. Chaniott was never offered FMLA leave or provided leave paperwork.

26. DCI discriminated against Mr. Chaniott on the basis of his disability, refused to engage in an interactive process about his accommodation requests, regarded him as disabled and retaliated against him for requesting an accommodation in the workplace.

## Count I
## Violation of ADA/ADAAA- Disability Discrimination/Retaliation

27. Plaintiff restates and incorporates herein the above paragraphs in their entirety.

28. Plaintiff was a qualified individual with a disability and/or perceived her as an individual with a disability.

29. Defendant discriminated and retaliated against Plaintiff on the basis of his disability in violation of the ADA that culminated in his termination.

30. Plaintiff could perform the essential functions of his job and did so for years. Plaintiff made a request for reasonable accommodation, including, but not limited to, to be able to continue working a day shift schedule.

31. Plaintiff was discriminated against and eventually terminated because of his disability and/or in retaliation for his request for a reasonable accommodation.

32. Defendant failed to accommodate Plaintiff's requests for accommodation; including, but not limited to, a return to a day shift schedule. Defendant failed to engage in a good faith interactive conversation with Plaintiff to determine if he could in fact perform the essential functions of his job or if he could be moved to another shift which would accommodate his disability. Instead, Defendant made a purely discriminatory decision to place Plaintiff out of work under the assumption that he could no longer perform his job.

33. The adverse actions Plaintiff endured, including, but not limited to, a forced leave from work and termination was because of his disability or perceived disability.

34. As a direct and proximate result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer emotional pain, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life, inconvenience and lost earnings and benefits.

35. As a result, Plaintiff is entitled to recover his damages, including lost wages and benefits, compensatory and punitive damages, attorneys' fees, costs, interest, reinstatement, front pay and benefits, and any other legal and equitable relief to which she may be entitled.

## Count II
### Violation of TDA- Disability Discrimination

36. Plaintiff restates and incorporates herein the foregoing paragraphs.

37. Plaintiff was a qualified individual with a disability.

38. Plaintiff was discriminated against due to his disability or perceived disability.

39. Defendant discriminated against Plaintiff on the basis of his disability in violation of the TDA.

40. Plaintiff was terminated because of his disability.

41. As a direct and proximate result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer emotional pain, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life, inconvenience and lost earnings and benefits.

42. As a result, Plaintiff is entitled to recover damages, including lost wages and benefits, compensatory and punitive damages, attorneys' fees, costs, interest, reinstatement, front pay and benefits, and any other legal and equitable relief to which he may be entitled.

## Count III
## Violations of FMLA

43. Plaintiff restates and incorporates herein the foregoing paragraphs.

44. Plaintiff was entitled to receive FMLA leave.

45. Defendant failed to offer Plaintiff FMLA leave while holding him out of work.

46. At all times material to this action, Plaintiff was an eligible employee under the FMLA, 29 U.S.C. § 2611(2)(a)(i)(ii).

47. Defendant is an eligible employer under the FMLA, 29 U.S.C. § 2611(4)(A)(i).

48. Plaintiff was entitled to receive FMLA leave to care for his serious health condition.

49. Defendant's conduct was a motivating factor in adverse employment actions against Plaintiff. Defendant's actions constitute interference and retaliation violations of the FMLA.

50. Defendant's conduct harmed and caused damage to Plaintiff.

51. As a result, Plaintiff is entitled to recover his damages, including lost wages and benefits, liquidated damages, attorneys' fees, costs, interest, reinstatement, front pay and benefits, and any other legal and equitable relief to which he may be entitled.

## RELIEF REQUESTED

Plaintiff respectfully requests:

1. A jury trial;

2. Back pay and damages for lost benefits;

3. Reinstatement or front pay;

4. Compensatory damages for embarrassment, humiliation, stress, anxiety, inconvenience, and loss of enjoyment of life;

5. Liquidated Damages under the FMLA;

6. Punitive damages;

7. Attorneys' fees and expenses;

8. Prejudgment interest and, if applicable, post-judgment interest; and

9. Such other and further legal or equitable relief to which he may be entitled under the ADA, TDA and FMLA.

Respectfully submitted,

*/s Heather Moore Collins*
Heather Moore Collins BPR # 026099
Anne Hunter BPR # 022407
Paige M. Lyle BPR # 032959
Collins & Hunter PLLC
7000 Executive Center Drive, Suite 320
Brentwood, TN 37027
615-724-1996
615-691-7019 FAX
heather@collinshunter.com
anne@collinshunter.com
paige@collinshunter.com

*Attorneys for Plaintiff*